LEONID AND POLINA MOSTOVOY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mostovoy v. Commissioner
Docket No. 10834-91
United States Tax Court
T.C. Memo 1994-546; 1994 Tax Ct. Memo LEXIS 554; 68 T.C.M. (CCH) 1091; 68 Trade Cas. (CCH) P1091; October 31, 1994, Filed *554 Decision will be entered under Rule 155. For petitioners: Daniel C. Conkling. For respondent: Alan R. Peregoy. SWIFT
SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in petitioners' 1986 and 1987 Federal income tax and additions to tax as follows: Additions to Tax Sec. Sec. Sec. Year
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6661 1986
$ 6,195
$ 4,646 *
$ 1,549
1987
$ 3,947
$ 2,960 *
--
* 50 percent of the interest due on the portion
of the underpayment attributable to fraud.
The issues for decision are: (1) Whether petitioners underreported their income for 1986 and 1987, and (2) whether petitioners are liable for the additions to tax. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time they filed their petition, petitioners resided in Reisterstown, Maryland. All references to petitioner in the singular are to Leonid Mostovoy. During 1986 and 1987, petitioner *555 was self employed as a taxicab driver, and Mrs. Mostovoy was self employed as a manicurist. In January of 1976, petitioners immigrated to the United States from Odessa, Ukraine, in the former Soviet Union, and petitioners are now U.S. citizens. Petitioner was trained in the Soviet Union as a tool and die maker, and when petitioner first came to the United States he worked as a machinist. In 1984, petitioner began working as a taxicab driver out of the Baltimore-Washington International Airport. Under the terms of the contract between petitioner and his contract employer, petitioner was permitted to pick up customers only at the airport. Petitioner could not pick up customers on return trips to the airport. Petitioner provided his own automobile and insurance. The record is unclear as to whether and how petitioner split with his contract employer the fares he received each day. Under the terms of the subcontract agreement, petitioner was required to pay to the contract employer $ 107 each week in consideration for being allowed to operate under the contract employer's license with the Baltimore-Washington International Airport. In addition to fares, petitioner received tips *556 from customers. Petitioner was required each day to keep a record or log of his fares and destinations. At the end of each day, petitioner was to make a copy of his log and was to turn in the original log for the day to his contract employer and retain the copy. Certain entries in petitioner's log for 1986, which is in evidence, appear irregular. For 1987, petitioner did not offer into evidence a copy of the log that should have been maintained. In May of 1985, petitioner was involved in an automobile accident which severely damaged his automobile. The record is not clear as to when and how petitioner disposed of the automobile involved in the accident. In November of 1986, petitioner was involved in another automobile accident. On July 7, 1987, petitioner received $ 4,058 apparently from the insurance company that represented the individual who caused the accident, and petitioner received an additional $ 3,135 from various other insurance companies in connection with this accident. On September 24, 1987, petitioner was involved in a third automobile accident, and late in 1987, petitioner received $ 2,107 from an insurance company, and on May 3, 1988, petitioner received *557 an additional $ 6,600 in connection with this accident. Elmer Dunn Sr. (Dunn), a certified public accountant, prepared petitioners' 1986 and 1987 Federal income tax returns. In connection with Dunn's preparation of petitioners' tax returns, petitioners did not provide to Dunn the retained copy of petitioner's daily log, nor records of the receipts from Mrs. Mostovoy's manicure business. Petitioners merely gave Dunn total income figures and represented the figures to be the total income for petitioner s taxicab business and for Mrs. Mostovoy s manicure business. The record is unclear as to the information petitioners provided Dunn with respect to the expenses for their businesses and as to whether petitioners gave Dunn receipts with respect to the expenses. Also, in connection with Dunn's preparation of petitioners' tax returns, petitioner gave Dunn a figure for tips that petitioner received in each year from his taxicab business, and petitioner represented that the tip figure was calculated on the basis of 8 percent of total fares he had received. On audit of petitioners' Federal income tax returns for 1986 and 1987, respondent used the source- and application-of-funds and bank-deposits *558 methods of reconstructing petitioners' income, and respondent made estimates of petitioners' personal living expenditures. Respondent used the above indirect methods to reconstruct petitioner's income due to the cash nature of petitioner's taxicab business and of Mrs. Mostovoy's manicure business and due to petitioners' failure to provide respondent with adequate documentation of their income and expenses. Respondent allowed petitioners all of the business expense deductions claimed by petitioners on the Schedule C forms attached to their 1986 and 1987 Federal income tax returns. Respondent also estimated petitioners' 1986 and 1987 annual personal living expenditures for food to be $ 5,200 and for clothing to be $ 1,000. Respondent determined that on petitioners' Federal income tax returns for 1986 and for 1987, petitioners underreported their taxable income by $ 24,977 and $ 16,581, respectively. The total expenditures, the total reported income, and the additional income that respondent charged to petitioners for 1986 and 1987 are summarized below: 1986
1987
Expenditures
$ 135,716 $ 175,151 Reported income
(110,739)
(158,570)
Additional income
$  24,977 $  16,581 *559 OPINION Deficiency determinations by respondent are presumed correct, and petitioners bear the burden of proving by a preponderance of the evidence that respondent's deficiency determinations are erroneous. Rule 142(a); . Petitioners herein contend that respondent's deficiency determinations are erroneous because respondent failed to give petitioners credit for certain nontaxable funds that petitioners allege they received in 1986 and 1987, and because the figures respondent used to estimate petitioners' personal living expenses are allegedly too high. Specifically, petitioners allege that they received in 1986 and 1987 nontaxable funds from repayments of certain loans that they had made in Russia to a nephew and to a friend prior to immigrating to the United States, and petitioners also allege that during 1986 and 1987 they received nontaxable insurance proceeds, nontaxable expense reimbursements from their daughter, and other nontaxable funds in settlement of the various automobile accidents for which respondent did not give petitioners credit. Petitioners allege further that during 1986 petitioner sold *560 parts of the automobile that had been "totaled" in the 1985 accident and that petitioners alleged tax basis in the automobile offset the funds received. Petitioners have not satisfied their burden of proof regarding the alleged loan repayments. At trial, petitioner and the named individual debtors who allegedly made the repayments testified generally regarding the alleged loans. Neither the loans nor the alleged repayments thereof were documented. The loans were purportedly made with cash, and each of the loan repayments that petitioner alleges he received was purportedly received in cash. At the time of the alleged loans, no written promissory notes were exchanged. Neither petitioner nor the alleged debtors produced any records, personal notes, or other documentation that reflect the loans, the loan balances, or any repayments. Likewise, the records of petitioners bank deposits that were offered into evidence do not substantiate receipt of the alleged repayments. Petitioner and petitioners' witnesses were only able to give general approximations of how much was allegedly received by petitioners in each year. The loan repayments that allegedly were received by petitioner in *561 1986 and 1987 have not been adequately established. On the evidence before us and for purposes of the substantive tax adjustments at issue in this case, we conclude that petitioners have not established that during 1986 and 1987 they received nontaxable income from repayments of loans. Petitioners also claim that they received from their daughter, Maria, nontaxable repayments with respect to educational expenses that petitioners allegedly advanced to Maria. Neither petitioners nor Maria, however, produced any records or canceled checks that verify the amount of funds that Maria allegedly repaid to petitioners. Without written records to corroborate the testimony and without more specific testimony as to the exact amounts received in each year, we conclude that petitioners have not met their burden of proof as to this alleged nontaxable source of income. As to the alleged nontaxable income received from insurance proceeds resulting from the automobile accidents and the sale of automobile parts and nontaxable insurance proceeds from an automobile accident, petitioners have not provided any credible documentation to verify either the receipt of additional insurance proceeds or the *562 sale of automobile parts. Accordingly, we conclude that petitioners have failed to prove by a preponderance of the evidence the receipt during 1986 or 1987, of these two alleged nontaxable sources of income. In calculating petitioners' expenditures, petitioners claim that respondent overestimated the amount petitioners spent each year on food and clothing. As indicated, respondent estimated that petitioners spent $ 5,200 a year on food ($ 100 per week) and $ 1,000 a year on clothing. Petitioner testified at trial that his family only spent $ 2,600 per year on food and $ 500 per year on clothing. Again, no records, canceled checks, or other corroborating testimony was produced at trial that would give some indication of what petitioners' actual expenditures for food and clothing were. We conclude that petitioners have not satisfied their burden of proving by a preponderance of the evidence that respondent's deficiency determinations were erroneous. We, therefore, sustain respondent's deficiency determinations as to petitioners' Federal income tax liability for 1986 and for 1987. With regard to the fraud additions to tax, section 6653(b)(1)(A) provides for an addition to tax *563 of 75 percent of the portion of the underpayment that is attributable to fraud. Additionally, section 6653(b)(1)(B) provides for an increase in the interest rate equal to 50 percent of the amount of interest payable under section 6601 on the portion of the underpayment that is attributable to fraud. Respondent, not petitioners, has the burden of proof on the fraud addition to tax. Sec. 7454(a); Rule 142(b). To satisfy this burden of proof, respondent must prove by clear and convincing evidence each of the following two elements of tax fraud under section 6653: (1) That the taxpayer underpaid taxes owed for each year; and (2) that some part of the underpayment is due to fraud. . Fraud consists of an intentional wrongdoing for the purpose of avoiding the payment of taxes known to be owed. , affd. . Generally, respondent meets her burden of proof on fraud by establishing specific conduct that shows the taxpayer intended to avoid taxes known to *564 be owed. ; . The existence of fraud is a question of fact to be resolved upon consideration of the entire record. ; , affd. without published opinion ; . Failure to keep records of income and expenses may be evidence of fraud. , affg. ; ; . Evidence that the taxpayer was attempting to defraud another in a business transaction is not direct evidence of fraud, but the Court may consider such evidence in determining the intent of the taxpayer. *565 , affd. . In support of the contention that petitioners filed fraudulent tax returns for 1986 and 1987, respondent contends that petitioners filed with respondent false 1986 and 1987 joint Federal income tax returns, that petitioners and their witnesses fabricated alleged sources of nontaxable income, and that in light of their cash-based businesses, petitioners maintained inadequate records. Also in support of respondent's fraud determination, respondent points to a mortgage loan application and a false copy of petitioners' 1986 Federal income tax return that petitioners submitted to a mortgage loan company in connection with petitioners' effort to refinance the mortgage on their home. The net income reflected on the mortgage application and on Schedule C of the false copy of petitioners' Federal income tax return for 1986 was $ 28,499 for petitioner's taxicab business and $ 16,375 for Mrs. Mostovoy's manicure business, for a total net income of $ 44,874. This contradicts the figures reported on petitioners' 1986 Federal income tax return that *566 they filed with respondent showing net income of $ 2,096 for petitioner's taxicab business and $ 6,685 for Mrs. Mostovoy's manicure business, for a total net income of $ 8,781. In spite of the above evidence and the fact that we have found for respondent on the tax deficiencies determined by respondent, we find for petitioners on the fraud additions to tax. As stated, respondent has the burden of proving fraud by clear and convincing evidence. Although not persuasive enough to satisfy petitioners' burden of proof for purposes of the tax deficiencies, petitioners' fact witnesses herein concerning the existence of the alleged nontaxable loan repayments were credible enough to preclude any finding herein that respondent has established fraud by clear and convincing evidence. In other words, in this case, on the tax deficiencies we have held for respondent because petitioners failed to satisfy their burden of proof, but on the fraud additions to tax we hold for petitioners because respondent has failed to satisfy her burden of proof. In consideration of the entire record, particularly the demeanor of petitioners and their witnesses at trial, and the manner in which petitioners cooperated *567 with respondent during respondent's audit examination, we conclude that respondent has failed to prove by clear and convincing evidence that petitioners underreported their income and intended to evade their Federal income tax liability for 1986 and 1987. Thus, we uphold respondent's deficiency determinations but deny the fraud additions to tax. The addition to tax under section 6661(b)(1)(A) will be sustained where there has been an understatement of income tax in excess of the greater of 10 percent of the tax required to be shown on the return or $ 5,000 and where the understatement is not supported by substantial authority. Petitioners have the burden of proof on this issue. We conclude that the addition to tax under section 6661 as determined by respondent is to be upheld. Based on our conclusion herein, Decision will be entered under Rule 155.